Clark, J.
Cross appeal from an order of the Supreme Court (J. Sise, J.), entered January 29, 2015 in Saratoga County, upon a decision of the court partially in favor of plaintiff.
In the spring of 2009, plaintiff entered into a contract with defendant to perform certain renovations to the front porch of a historical building owned by defendant in the Village of Waterford, Saratoga County. The contract provided that defendant would pay plaintiff on “a time and material basis,” with labor being billed at a rate of $48 per hour per laborer and the materials and subcontractors’ services to be billed at a zero percent markup from plaintiff’s costs. The contract further required defendant to pay a $13,500 retainer fee, which defendant paid in May 2009. Thereafter, plaintiff began work on the premises and periodically submitted invoices to defendant for the work performed. After defendant stopped paying the invoices in or around July 2009, plaintiff ceased work on the premises and commenced this breach of contract action to recover the unpaid balance of $80,032.70, plus interest, for work it had completed, as well as reasonable counsel fees and costs. Defendant answered and asserted a counterclaim alleging that plaintiff charged him for labor not performed and *1435 materials and equipment not used and that he was entitled to damages in the amount of $130,000 to remediate so much of plaintiffs work as was not completed in a workman-like manner. Defendant also sought counsel fees and costs.
Following a nonjury trial, Supreme Court determined that plaintiff was entitled to recover the balance owed for the labor, material and services it had rendered, but, based upon its finding that plaintiff had used improper lumber for the surface decking of the porch and that the height of the porch stair risers was “inadequate,” reduced plaintiffs damages by the costs of the labor and materials associated with the installation of the decking and awarded defendant damages for the cost of deconstructing the decking and remedying the defects in the stair risers. Defendant appeals, and plaintiff cross-appeals from, as limited by plaintiffs notice of cross appeal, so much of the order as determined that it was not entitled to recover the costs of installing the porch surface decking and was liable to defendant for the cost of removing that decking.
Defendant asserts that plaintiffs work was not performed in a workman-like manner and violated certain provisions of the applicable building codes and, therefore, Supreme Court should not have held him liable for the payment of any portion of the balance owed and, instead, should have determined that he was entitled to recover the cost of remedying all of plaintiffs defective work, not just the porch surface decking and stair risers. Plaintiff counters that the evidence supports Supreme Court’s determination that it was not responsible for any defects that resulted from complying with defendant’s plans and specifications, but that Supreme Court should have applied the same reasoning to find that it was not liable for any defects caused by the type of lumber that defendant selected for the surface decking.* In assessing these competing claims, we note that, when reviewing a determination following a nonjury trial, we independently review the weight of the evidence, while according appropriate deference to the trial court’s credibility assessments and factual findings (see AMCAT Global, Inc. v Greater Binghamton Dev., LLC, 140 AD3d 1370, 1372 [2016], lv denied 28 NY3d 904 [2016]; Mary Imogene Bassett Hosp. v Cannon Design, Inc., 127 AD3d 1377, 1378 [2015]; *1436 Deep v Boies, 121 AD3d 1316, 1318-1319 [2014], lv denied 25 NY3d 903 [2015]).
Initially, Supreme Court’s determination that plaintiff accurately charged defendant for the labor, materials and subcontractors’ services that it provided is amply supported by the weight of the evidence. The testimony, as credited by Supreme Court, established that the scope of the project initially involved supporting the existing roof structure of the building and repairing the columns and piers, but that it later dramatically changed to involve a complete demolition of the existing structure, digging below grade and reconstructing the columns, piers and decks. In addition, plaintiff provided defendant with electrical, plumbing and tile work and also cleared large amounts of debris from the basement and attic of the building. Plaintiff produced as witnesses all but four of the individuals who performed work on the premises and submitted into evidence each of their time sheets. Supreme Court found these witnesses to have credibly testified as to the accuracy and completeness of their respective time sheets, and we will not disturb this credibility determination on appeal.
We thus turn to the question of whether plaintiff is liable to defendant for the alleged defects in its work. In contrast to a performance specification contract, which affords a contractor the freedom to choose the materials and methods employed to achieve a specified result, a design specification contract requires a contractor to use the materials, methods and design dictated by the owner, without bearing any “responsibility if the design proves inadequate to achieve the intended result” (Fruin-Colnon Corp. v Niagara Frontier Transp. Auth., 180 AD2d 222, 229-230 [1992]; see MacKnight Flintic Stone Co. v Mayor of City of N.Y., 160 NY 72, 82 [1899]; Hayward Baker, Inc. v C.O. Falter Constr. Corp., 104 AD3d 1253, 1254 [2013]). In other words, when there is a design specification contract, a contractor follows the architectural plans and specifications provided by an owner, and the contractor will not be responsible for the consequences of defects in such plans and specifications or be prevented from recovering contractually-agreed upon payments for work completed in compliance with them (see United States v Spearin, 248 US 132, 136 [1918]; MacKnight Flintic Stone Co. v Mayor of City of N.Y., 160 NY at 82; Larchmont Nurseries, Inc. v Daly, 33 AD3d 872, 874 [2006]; Fruin-Colnon Corp. v Niagara Frontier Transp. Auth., 180 AD2d at 229-230; Ferrari v Barleo Homes, 112 AD2d 137, 137 [1985]). Whether a construction contract is one of performance or design specification turns on the language of the contract as *1437 a whole, with consideration given to factors such as “the nature and degree of the contractor’s involvement in the specification process, and the degree to which the contractor is allowed to exercise discretion in carrying out its performance” (Fruin-Colnon Corp. v Niagara Frontier Transp. Auth., 180 AD2d at 230; accord Hayward Baker, Inc. v C.O. Falter Constr. Corp., 104 AD3d at 1254).
Here, although the contract did not expressly state whether the parties entered into a performance or design specification contract, it is abundantly clear that the parties were working pursuant to a design specification agreement. The contract required plaintiff to obtain defendant’s written approval of any subcontractor that was to perform work on the premises. In addition, the evidence established that plaintiff and defendant abandoned the plans and specifications drawn by an architect hired by defendant once the scope of the project changed and that, from there, plaintiff performed its work pursuant to defendant’s plans and specifications. Further, plaintiff’s witnesses consistently testified that defendant, a licensed architect, was involved in every decision on the job site, that defendant’s permission was required before work on a new aspect of the project began, that defendant had the “final word” on the materials used and that defendant would inspect completed work and, at times, request alterations.
With respect to the individual defects alleged by defendant, plaintiff’s evidence demonstrated that the work was completed according to defendant’s instructions. For example, plaintiff’s owner and president asserted that the porch was sufficiently anchored to the building, that the height between the front door and the deck, as well as the pitch of the deck, were based on defendant’s drawings and that defendant approved the location of the piers. The record also revealed that some of the inadequacies alleged by defendant were the result of plaintiff having ceased work before completion due to defendant’s nonpayment. Thus, having independently reviewed the record with respect to each of the alleged deficiencies, and according appropriate deference to Supreme Court’s factual findings and credibility assessments, we leave undisturbed Supreme Court’s determination that defendant was responsible for any defects that resulted from his design and therefore could not escape payment of the balance owed to plaintiff for the completed work (see Larchmont Nurseries, Inc. v Daly, 33 AD3d at 874; Fruin-Colnon Corp. v Niagara Frontier Transp. Auth., 180 AD2d at 230-232; Ferrari v Barleo Homes, 112 AD2d at 137).
We, however, find that Supreme Court improperly deter *1438 mined that plaintiff was liable for defendant’s flooring choice for the porch surface decking. Plaintiffs owner and president testified that defendant insisted upon using pine for the decking, despite his repeated recommendations to use a different material. He asserted that he expressed to defendant his preference for using vinyl flooring, rather than pine, but that defendant steadfastly rejected this proposal. Furthermore, several other of plaintiff’s witnesses confirmed that defendant was adamant about using pine flooring, though he was informed that it was not a suitable choice for decking in the northeast. Accordingly, as the weight of the evidence supports the conclusion that plaintiff was following defendant’s instructions when it used pine flooring for the porch surface decking, we reverse so much of Supreme Court’s order as held that defendant was not responsible for paying plaintiff for the costs associated with the installation of the decking and that plaintiff was liable for the cost of deconstructing the deck (see Larchmont Nurseries, Inc. v Daly, 33 AD3d at 874).
Further, Supreme Court directed in its decision that a hearing be held to determine, among other things, “the costs of litigation and attorneys’ fees,” but did not specify which party was entitled to such award, and, at the time of oral argument, it had apparently not yet resolved plaintiff’s posttrial motion seeking clarification on this issue. Therefore, the issue is not ripe for our review.
Finally, to the extent that our determination does not expressly address each of defendant’s arguments, such arguments have been examined and found to be lacking in merit.
Peters, P.J., Lynch, Devine and Aarons, JJ., concur.
Ordered that the order is modified, on the law, without costs, by reversing so much thereof as determined that defendant was not liable to plaintiff for the costs associated with the installation of the porch surface decking and that plaintiff was liable to defendant for the cost of deconstructing the decking, and, as so modified, affirmed.

 In its appellate brief, plaintiff did not address Supreme Court’s determination to award defendant damages for the cost of remedying the defects in the porch stair risers and, as such, any challenge thereto is deemed abandoned (see Miazga v Assaf, 136 AD3d 1131, 1132 n 1 [2016], lv dismissed 27 NY3d 1078 [2016]; New York State Workers’ Compensation Bd. v Consolidated Risk Servs., Inc., 125 AD3d 1250, 1252 n 2 [2015]).